### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

**SVETLANA KAZAKOVA,**
                                    **Plaintiff**

**v.**                                                         **Civil Action No.**
                                                          **3:04CV658-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
                                    **Defendant**

### MEMORANDUM OPINION

This case presents plaintiff Svetlana Kazakova's challenge to the decision of the

Commissioner denying her claim to Supplemental Security Income benefits.  After examining

the materials of record, the arguments of the parties, and the applicable authorities, the Court is

of the opinion that the decision of the Commissioner should be affirmed.

Ms. Kazakova filed her application in November of 2003, alleging that she was unable to

engage in any substantial gainful employment because of headaches and pain in her neck and her

back.  After a hearing, the Administrative Law Judge ("ALJ") found that Ms. Kazakova's

degenerative disc disease/arthritis was a severe impairment, but that she had not presented proof

that it prevented her from performing her past relevant work as an assembler.

If the Commissioner's decision is supported by substantial evidence, the reviewing Court

must affirm.  Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991).   The Court's obligation to affirm

in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion.  Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994),  Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

The disability determination process consists of five steps.  Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992).  These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

1.  The claimant must not be engaged in substantial gainful activity.

2.  The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking.  20 CFR Section 416.921.

3.  If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

4.  The claimant must be unable to do his or her past relevant work.

5.  If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs.  Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

Ms. Kazakova contends that the Commissioner erred at Step 3.   Plaintiff bears the burden of proving that she meets or equals a Listing.  Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987).  Furthermore, in order to prove that he equals a listing, plaintiff must point to

2

impairments that are at least equal in severity to the Listing impairments with which he compares them. Dorton v. Heckler, 789 F.2d 363 (6th Cir. 1986). Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing. Hale v. Secretary, 816 F.2d 1078 (6th Cir. 1987).

Listing 1.04 of 20 C.F.R. Part 404, Subpart P, App. 1 requires a showing of a disorder of the spine with (1) "evidence of nerve root compression characterized by neuro-anatomic distribution of pain," (2) "limitation of motion of the spine," (3) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss" and, if there is involvement of the lower back, (4) "positive straight-leg raising test (sitting and supine)." Ms. Kazakova contends that all of these elements are established. The Commissioner points to the lack of evidence of "nerve root compression characterized by neuro-anatomic distribution of pain."

The Court agrees that the plaintiff has failed to carry her burden of proving the existence of every element of the Listing. While the record includes evidence of back and neck pain, it does not include demonstration of distribution of that pain in a manner indicating nerve root compression. Additionally, while the record refers in several places to spinal stenosis (resulting from enlargement of the primary ligament), there is no proof that the narrowing has progressed to the point of neural compression, nor is there any suggestion of ossification of the ligamentum flavum. The March 2002 cervical spine x-ray report explicitly stated there was "no significant encroachment upon the neural foramen." Tr. 109. The March 2005 lumbar CT studies showed "no significant foraminal impingement." Tr. 196-197.

Ms. Kazakova next argues that the ALJ erred in his evaluation of her credibility

3

regarding the severity of her symptoms.  A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter. Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987).  "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987).  An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990).  Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).  Nonetheless, the ALJ's credibility assessment must be supported by substantial evidence.  Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997).  Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so.  Auer v. Secretary, 830 F.2d 594, 595 (6th Cir. 1987).

In this case, the ALJ gave a number of reasons for his inability to accept the severity of symptoms to which Ms. Kazakova testified, including (1) her receipt of only conservative treatment, (2) failure to mention her back to her doctor for many months, (3) only minor restrictions of range of motion, (4) her description of the pain to one examiner as "intermittent," (5) inconsistency between her description of headaches at the hearing and her reports to her physician, and (6) the ALJ's observation of her ability to sit, stand and walk at the hearing without apparent discomfort.  Ms. Kazakova contends that her treatment can be described as

4

"conservative" only if the alternative is surgery; however, while she points to some "apparent" recommendations of surgery, she admits that she rejected that option.  She also objects to reliance on the consultative examiner's report, contending that the ALJ was inconsistent in his treatment of the report and that he impermissibly resorted to "picking and choosing."  However, it is apparent that the ALJ did not discredit Dr. Akaydin's report in its entirety; rather, the ALJ found no fault whatsoever with the doctor's *examination* findings, but the ALJ noted that the radiographic evidence (to which Dr. Akaydin did not have access) supported additional restrictions not revealed by physical examination alone.  In July of 2002, Ms. Kazakova described her pain as ranging between a 3 and a 7 (on a scale of 1 to 10), and the higher levels of pain occur after "walking the length of a mall," "bending," or "cooking for a long time."  Tr. 68. None of these activities were required in her past relevant work.  In October of 2002, she told Dr. Lambert that she had been having trouble with "intermittent back pain." Tr. 72.   The Court finds no legal error in the ALJ's credibility determination.

Ms. Kazakova contends that the ALJ erred in failing to accord the proper weight to the physical capacity opinions of her treating physician.  The ALJ noted Dr. Ishkanian's opinion that Ms. Kazakova lacked the physical capacity for any lifting and carrying or any standing or walking.  The ALJ rejected these restrictions because of Ms. Kazakova's own testimony regarding her daily activities.  She testified that she could stand and or walk for twenty minutes at a time.  Tr. 221-222.  She stated she can sweep and dust, and that it is hard for her to lift a gallon of milk.  Tr. 222-223.   As noted earlier, she previously spoke of "walking the length of a mall," "bending," and "cooking for a long time."  Tr. 68.  All of these activities would be precluded by the physical capacity assessment provided by Dr. Ishkanian; accordingly, given

that she *does*, in fact, perform this activities, it was entirely appropriate for the ALJ to conclude that she had physical capacity in excess of that identified by Dr. Ishkanian.

The Court concludes that there was no legal error, and that substantial evidence supports the decision.  An order in conformity has this day entered.